UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| WILLIAM SITTON, | ) |
| | ) |
|     Petitioner, | ) |
| | ) |
| vs. | )    Case No. 4:13-CV-2390-CEJ |
| | ) |
| JAY CASSADY, | ) |
| | ) |
|     Respondent. | ) |

## **MEMORANDUM AND ORDER**

This matter is before the Court on the petition of William Sitton for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent has filed a response in opposition and the issues are fully briefed.

### I.    **Factual Background**

Petitioner and Tracy Dykes, the victim, were business associates and friends. They "operated a back-yard car repair business together and spent almost every night together drinking." Resp. Ex. E, at 362. On March 20, 2004, Dykes and petitioner drove from Bowling Green, Missouri to the home of another friend – Mike Castelli – in Mexico, Missouri. *Id.* At that time they were already visibly intoxicated, but had Castelli drive them to acquire more alcohol. *Id.* During that drive, Dykes and petitioner engaged in "'play fighting' and wrestling," with some escalation. *Id.*

After the group returned to Castelli's home, petitioner used a baseball bat to damage a car belonging to Castelli's brother-in-law. *Id.* The police came to investigate, and before they departed, petitioner threatened a police officer. *Id.*

Castelli agreed to drive the petitioner and Dykes back to Bowling Green. *Id.* at 363. Dykes and petitioner argued about the earlier car incident and petitioner

insulted Dykes, who eventually pulled petitioner by the throat into the backseat, where they continued to fight. *Id.* Eventually, the arguing and fighting ceased, and petitioner remained in the backseat as Castelli drove. *Id.* Petitioner directed Castelli to drop him off at his father's home, and when Castelli turned around, he "noticed dark red, bloody spots in the back of the van and asked [petitioner], who was holding up a blue fold-up knife, what he had done." *Id.* When Castelli indicated that he wanted to take Dykes to the hospital, petitioner demanded that Castelli drive to his father's home – threatening to kill Castelli and "everyone [he] love[d]" should he fail to comply. *Id.* After petitioner and Castelli arrived at the home of petitioner's father, his father called the police. *Id.* Petitioner told police that he had stabbed Dykes in self-defense. *Id.*

Petitioner was charged with one count of first-degree murder and one count of armed criminal action. *Id.* at 365. On July 22, 2005, following a two-day trial, a jury in the Lincoln County Circuit Court found him guilty of the lesser included offense of first-degree involuntary manslaughter and armed criminal action. Resp. Ex. B, at 176–77. Petitioner is currently incarcerated at Jefferson City Correctional Center.

## II. **Procedural Background**

On September 6, 2005, the trial court sentenced petitioner to an aggregate term of twenty-five years' imprisonment—seven years for involuntary manslaughter and eighteen years for armed criminal action. *Id.* at 191–93. The Missouri Court of Appeals granted leave to file a late notice of appeal, and on January 12, 2006, petitioner filed a notice of direct appeal *in forma pauperis*. Resp. Ex. B, at 194–95, 203–04. The Missouri Court of Appeals affirmed the judgment of the trial court by

2

per curiam order on February 20, 2007. Resp. Ex. E, 000360; *State v. Sitton*, 214 S.W.3d 404 (Mo. Ct. App. 2007).[1] Petitioner did not seek to transfer the case to the Supreme Court of Missouri, and thus the judgment became final when the court of appeals issued its mandate on March 14, 2007. 28 U.S.C. § 2244(d)(1)(A); *see Gonzalez v. Thayer*, 132 S. Ct. 641, 646 (2012); *Streu v. Dormire*, 557 F.3d 960, 962 (8th Cir. 2009).

Petitioner moved for post-conviction relief in the Lincoln County Circuit Court pursuant to Rule 29.15 on May 15, 2007. The court denied the motion on October 31, 2008. Resp. Ex. F, at 349–51; Resp. Ex. G, at 435 app. A-1; Mo. Sup.Ct. R. 29.15. Petitioner appealed on December 1, 2008, and the Missouri Court of Appeals affirmed the denial of post-conviction relief on October 13, 2009. Resp. Ex. F, at 351; Resp. Ex. I; *Sitton v. State*, 294 S.W.3d 137 (Mo. Ct. App. 2009) (per curiam).[2]

At the time of petitioner's trial, jurors were permitted to opt out of service "by agreeing to perform community service and paying a $50 fee." *State ex. rel. Sitton v. Norman*, 406 S.W.3d 915, 916 (Mo. 2013) (en banc). On October 18, 2010, after learning about the opt-out option, petitioner filed an amended motion for a new trial. [Doc. #20 at 1].[3] Because the motion was not ruled on within ninety days (by January 23, 2011), it was denied by operation of law. Resp. Ex. J, at 499; Mo. Sup.Ct. R. 29.11(g). On October 21, 2010, petitioner also filed a motion to recall the mandate and remand for filing an amended motion for new trial

---

[1] The Court issued an informal, unreported memorandum supplementing the order. Resp. Ex. E.
[2] The Court issued an informal, unreported memorandum supplementing the order. Resp. Ex. I.
[3] Petitioner asserts that he did not learn of the juror opt-out procedure until the Missouri Court of Appeals issued its decision in *Preston v. State*, 325 S.W.3d 420 (Mo. Ct. App. 2010). [Doc. #1 at 7].

3

due to newly discovered evidence of improper jury assembly procedures; that motion was denied on October 26, 2010. *Id.* at 7.

On November 30, 2011, petitioner filed a petition for habeas corpus relief in the Circuit Court of Cole County, asserting that the jury opt-out procedure did not comply with Mo. Ann. Stat. §§ 494.400-494.505.[4] Resp. Ex. J, at 500. The motion was denied on March 19, 2012. *Id*. Petitioner's appeal was denied on August 6, 2012. *Id*. The petitioner then appealed to the Missouri Supreme Court on December 12, 2012. *Id*. In his brief, petitioner argued that the opt-out procedure (1) denied him a jury drawn from a fair cross-section of the community, thereby violating his Sixth and Fourteenth Amendment rights, and (2) violated state statutory jury selection requirements. Resp. Ex. J, at 503. The Missouri Supreme Court denied the petition on July 30, 2013. Resp. Ex. L, at 548; *State ex. rel. Sitton v. Norman*, 406 S.W.3d 915 (Mo. 2013) (en banc).

On October 25, 2013, petitioner filed the instant petition asserting that (1) the Lincoln County opt-out practice violated his Sixth Amendment guarantee of an impartial jury, (2) the Missouri Supreme Court violated his Fourteenth Amendment right to equal protection.

### III. Legal Standard

28 U.S.C. § 2254 provides that a prisoner in state custody may petition a federal court for a writ of habeas corpus "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

---

[4] The claim that the practice of opting out fails to comply with jury selection requirements of § 494.400 to 494.505 was not raised on direct appeal or during post-conviction proceedings. Resp. Ex. L at 549. The Supreme Court of Missouri found that even if petitioner could establish cause for this procedural default, he could not establish prejudice warranting habeas relief. *Id*.

4

When a petitioner's claim has been adjudicated on the merits in a state court proceeding, habeas relief is available under the Antiterrorism and Effective Death Penalty Act (AEDPA) only if the state court's determination:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision on the merits of a petitioner's claim is "contrary to" clearly established law if "it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme Court] but reaches a different result." *Brown v. Payton*, 544 U.S. 133, 141 (2005). "[T]he state court need not cite or even be aware of the governing Supreme Court cases, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" *Brown v. Luebbers*, 371 F.3d 458, 467 (8th Cir. 2004) (quoting *Early v. Packer*, 537 U.S. 3, 8 (2002).

A decision involves an "unreasonable application" of clearly established law if it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts" of the petitioner's case. *Williams v. Taylor*, 529 U.S. 362, 413 (2000); *see Payton*, 544 U.S. at 141 (explaining the application must be "objectively unreasonable"). An "unreasonable application" also occurs "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not

apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407. But "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 410.

## IV. <u>**Statute of Limitations**</u>

The AEDPA provides for a one-year statute of limitations for habeas corpus petitions. 28 U.S.C. § 2244(d)(1). Specifically the statute provides that:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing such by State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244.

Failure to file within one year requires dismissal of the petition for a writ of habeas corpus. *See Cross–Bey v. Gammon*, 322 F.3d 1012 (8th Cir. 2003). The limitations period is tolled, however, while a properly filed application for state post-conviction or other collateral review of the pertinent judgment or claim is pending. 28 U.S.C. § 2244(d)(2). A case is considered pending "between a lower state court's decision and the filing of a notice of appeal to a higher state court."

*Carey v. Saffold*, 536 U.S. 214, 217 (2002). Moreover, an application for state post-conviction or collateral review is pending "during the time in which a prisoner may appeal a denial of the application, even if the prisoner does not appeal." *Streu v. Dormire*, 557 F.3d 960, 966 (8th Cir. 2009) (citing *Williams v. Bruton*, 299 F.3d 981, 983 (8th Cir. 2002)). But, Eighth Circuit precedent also "makes clear, however, that the time between the date that direct review of a conviction is completed and the date that an application for state post-conviction relief is filed counts against the one-year period." *Painter v. Iowa*, 247 F.3d 1255, 1256 (8th Cir. 2001); *see Streu*, 557 F.3d at 96; *Curtiss v. Mount Pleasant Correctional Facility*, 338 F.3d 851, 853–55 (8th Cir. 2003); *see also Jackson v. Ault*, 452 F.3d 734, 735–36 (8th Cir. 2008) (holding that adherence to state deadlines does not aid petitioners if the "application for post-conviction relief [is] not within the one year AEDPA limitations period."). Finally, the limitations period is also tolled during pending state habeas proceedings. *Polson v. Bowersox*, 595 F.3d 873, 875 (8th Cir. 2010).

The statute of limitations for habeas relief may be equitably tolled if the litigant establishes two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Burns v. Prudden*, 588 F.3d 1148, 1150 (8th Cir. 2009) (internal citation and quotation omitted). Equitable tolling offers "an exceedingly narrow window of relief." *Jihad v. Hvass*, 267 F.3d 803, 805 (8th Cir. 2001). "Pro se status, lack of legal knowledge or legal resources, confusion about or miscalculations of the limitations period, or the failure to recognize the legal ramifications of actions taken in prior post-conviction proceedings are inadequate to warrant equitable tolling." *Shoemate v. Norris,* 390

7

F.3d 595, 598 (8th Cir. 2004) (citations and quotation marks omitted). It is, however, "'proper only when extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time'" or "'when conduct of the defendant has lulled the plaintiff into inaction.'" *Jihad*, 267 F.3d at 805 (quoting *Kreutzer v. Bowersox*, 231 F.3d 460, 463 (8th Cir. 2000)).

V.     **Discussion**

**Ground 1**

Petitioner first contends that he was been denied the Sixth Amendment right to an impartial jury. [Doc. #20 at 3]. To rebut respondent's assertion that the Sixth Amendment claim is untimely, petitioner offers two arguments: (1) that the statute of limitations should be tolled between October 25, 2010, and January 23, 2011, while his motion for a new trial was pending, and (2) that the limitations period should begin on October 18, 2010, pursuant to 28 U.S.C. § 2244(d)(1)(D).[5] Even if the Court accepted these arguments, the AEDPA limitations period expired prior to the filing of petitioner's federal habeas petition.

On direct appeal, the Missouri Court of Appeals affirmed the judgment on February 20, 2007. Resp. Ex. E, at 360. Because petitioner did not seek to transfer to the Supreme Court of Missouri, the judgment became final on March 14, 2007. *State v. Sitton*, 214 S.W.3d 404 (Mo. Ct. App. 2007). The AEDPA limitations period began to run at that time. *See* 28 U.S.C. § 2244(d)(1)(A). On May 15, 2007, 61 days later, petitioner filed for post-conviction relief in the Lincoln County Circuit Court. The limitations period was tolled through the appeal to the Missouri Court of Appeals, which affirmed the denial of post-conviction relief on October 13, 2009.

---

[5] Petitioner's legal arguments are not entirely clear, but the Court construes the pro se habeas petition liberally. *See Mellott v. Purkett*, 63 F.3d 781, 784–85 (8th Cir. 1995).

8

*Sitton v. State*, 294 S.W.3d 137 (Mo. Ct. App. 2009) (per curiam).

After 377 days passed – on October 25, 2010 – petitioner filed a motion for a new trial, which expired after 90 days – on January 23, 2011. Based on these facts, the AEDPA limitations period expired before petitioner even filed his state habeas petition on November 30, 2011. Resp. Ex. J, at 500. Thus, the state habeas petition would not toll the limitations period. *See Jackson v. Ault*, 452 F.3d 734, 736 (8th Cir. 2006) (reasoning that "[t]he one year AEDPA limit for federal habeas filing cannot be tolled after it has expired.").

Petitioner makes several arguments to contest the presumptive expiration of the AEDPA limitations period. First, he avers that the limitations period should be tolled during the period his new trial motion was pending. But, even if the Court finds that the new trial request constituted "a part of a broader effort to have effort to have his conviction set aside" and the court tolled the time while the motion was pending (from October 25, 2010 to January 23, 2011), the limitations period still lapsed before he filed his new trial motion. *See Streu v. Dormire*, 557 F.3d 960, 963 (8th Cir. 2009) (finding that tolling the statute of limitations during a motion to reopen served the interests of "comity" and encouraged petitioners "'to seek relief from state courts in the first instance'") *(quoting Rhines v. Weber*, 544 U.S. 269, 276 (2005)).

Petitioner also argues that the statute of limitations should start running on October 18, 2010, when he discovered the juror opt-out practice. [Doc. #26 at 2]; *see* 28 U.S.C. § 2244(d)(1)(D). Even if accepted, this argument[6] does not help the

---

[6] Specifically, petitioner contends that "[i]t would not be reasonable to expect that a trial attorney would go through the records of the Circuit Court Clerk's office to try to ascertain whether or not there was any wrongdoing on the part of the court." [Doc. #20 at 2].

9

petitioner. If the period of limitations starts on October 18, 2010, more than a year would have accrued before he filed the federal habeas petition: (1) 7 days passed before he filed his new trial claim on October 25, 2010, (2) 311 days passed between the lapse of the new trial motion on January 23, 2011, and the filing of the state habeas petition on November 30, 2011, and (4) 87 days passed between the denial of the state habeas petition on July 30, 2013, and the filing of the federal habeas petition on October 25, 2013. In total, 405 days elapsed, even if the Court accepts petitioner's argument that he could not discover the facts underlying his AEDPA claim until October 18, 2010.

Petitioner does not offer any arguments regarding equitable tolling. But regardless, petitioner can hardly be said to have diligently pursued his rights, and no extraordinary circumstances stood in his way – "petitioner's lack of diligence precludes equity's operation." *Pace v. DiGuglielmo*, 544 U.S. 408, 419 (2005). Accordingly, petitioner is not entitled to equitable tolling of the statute of limitations.

Petitioner's first claim, therefore, was filed outside statute of limitations. *See* 28 U.S.C. § 2244(d)(1); *Cross–Bey v. Gammon*, 322 F.3d 1012 (8th Cir. 2003).

### Ground 2

In *Preston v. State*, 325 S.W.3d 420 (Mo. Ct. App. 2010) and in *State ex rel. Koster v. McCarver*, 376 S.W.3d 46 (Mo. Ct. App. 2012), the petitioners challenged the opt-out practice and were granted habeas relief. Petitioner here argues that the Missouri Supreme Court violated his right to equal protection by granting relief in those cases while denying it to him.

There are several ways to interpret this argument. First, petitioner could be

recasting an argument about the juror opt-out procedure's constitutionality as an equal protection claim. This claim, therefore, is at best simply a restatement of petitioner's Sixth Amendment claim, which is barred by AEDPA's statute of limitations.

Second, his claim could be construed as a challenge to the Missouri Supreme Court's application of state law. Although petitioner denies that he presents any issues of state law, he argues that "[t]he Missouri Supreme Court's opinion in Sitton's case is contrary to its prior opinions" (in *Preston* and *McCarver*).[7] Notably, the Missouri Supreme Court's habeas opinion rests on state law grounds – because petitioner "did not specifically develop his constitutional claims in the text of his argument and, instead, focus[ed] his argument on the alleged violation of the jury selection statutes." Resp. Ex. L, at 549 n. 2. But, this Court cannot review the state court's interpretation of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *see also Middleton v. Roper*, 455 F.3d 838, 852 (8th Cir. 2006). "Federal habeas corpus relief does not lie for errors of state law," as "it is not the province of a federal habeas court to reexamine state-court determinations on state law questions." *Id.*

Third, petitioner's argument could be construed as asserting an "infirmity in proceedings collateral to his confinement" – a non-cognizable ground in § 2254 proceedings. *Daugherty v. Dormire*, No. 4:07-CV-1530-HEA, 2009 WL 1405464, at *17 (E.D. Mo. May 18, 2009). "An infirmity in a state post-conviction proceeding does not raise a constitutional issue cognizable in a federal habeas petition." *Gee v. Groose*, 110 F.3d 1346, 1351–52 (8th Cir. 1997) (internal quotations and citations

---

[7] *Preston v. State*, 325 S.W.3d 420 (Mo. Ct. App. 2010); *State ex rel. Koster v. McCarver*, 376 S.W.3d 46 (Mo. Ct. App. 2012).

omitted); *see also Jolly v. Gammon*, 28 F.3d 51, 54 (8th Cir. 1994); *Basile v. Bowersox*, 125 F. Supp. 2d 930, 977 (E.D. Mo. Dec. 16, 1999).

**VI.** **Conclusion**

For the reasons discussed above, the Court concludes that the petition for a writ of habeas corpus should be denied. Additionally, because petitioner has failed to make a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997).

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 13th day of March, 2017.